JOHN C. SCHMIDEL and ANNE C. SCHMIDEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schmidel v. Comm'r
Docket Nos. 1170-83, 588-84.
United States Tax Court
T.C. Memo 1984-660; 1984 Tax Ct. Memo LEXIS 13; 49 T.C.M. (CCH) 351; T.C.M. (RIA) 84660; December 20, 1984. Richard L. Stradley, for the petitioners. Wayne R. Appleman, for the respondent. FAY
*13 MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: *14 Sec. 6653(a) [1]
Sec. 6653(a)(2)
Year
Deficiency
Additions to Tax [2]
Additions to Tax
1979
$4,706
$235
1980
4,608
230
1981
5,040
252
[3]
*15 The issues are (1) whether petitioners are entitled to charitable contribution deductions for amounts purportedly contributed to the Universal Life Church, (2) whether petitioners are liable for additions to tax under sections 6653(a) and 6653(a)(2), and (3) whether petitioners are liable for damages under section 6673. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. Petitioners, John C. Schmidel and Anne C. Schmidel, resided in Anchorage, Alaska, when the petitions were filed herein. Petitioner John C. Schmidel was employed by Lynden Transport, Inc. (Lynden) primarily as a truck driver during the years in issue. He earned wages from Lynden totalling $29,755.88, $34,891.48, and $40,743.04 during 1979, 1980, and 1981, respectively. Petitioner Anne C. Schmidel worked for Lake Otis X-Ray, Inc. and earned wages totalling $9,391.90 in 1979. During 1981 Mrs. Schmidel worked for MD Enterprises, Anchorage Medical & Surgical Clinic, and William J. Mills, Jr., M.D., and earned wages totalling $1,896.98 that year. In November 1979 petitioners formed a chapter of the Universal Life Church, Inc., designated as Charter No. 32680 (herein "ULC Charter *16 No. 32680"). In connection therewith, on January 8, 1980, petitioners opened checking account No. XXXX3344 with the Alaska Bank of Commerce in the name of Universal Life Church Charter No. 32680 (herein the "ULC account"). Petitioners had signatory powers and full control over the ULC account and determined how the funds therein would be used. Petitioners used their home address as the address for ULC Charter No. 32680. Petitioners also used funds in the ULC account to pay various personal expenses, including payments for automobile expenses. On their Federal income tax returns for 1979, 1980, and 1981, petitioners deducted $14,726, $16,546, and $13,883, respectively, as charitable contributions to ULC Charter No. 32680. In his notices of deficiency, respondent disallowed these claimed deductions. In addition, respondent asserted additions to tax under section 6653(a) for all years and 6653(a)(2) for 1981. OPINION The first issue is whether petitioners are entitled to deductions under section 170 for amounts claimed as charitable contributions to The Universal Life Church. Section 170(a) allows a deduction for charitable contributions made during the taxable *17 year. The term "charitable contribution" is defined in section 170(c) as follows: (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * The burden of proving entitlement to a deduction is on petitioners. ; Rule 142(a). Thus, petitioners must show that all requirements of section 170 have been satisfied. In considering the record herein, we conclude that petitioners have failed to carry their burden. First, section 170(a) requires that a charitable contribution actually be made within the taxable year for which a deduction is sought. The term "charitable contribution" as it is used generally in section 170 is largely synonymous with the term "gift." ; *18 , affd. . It is well established that where taxpayers retain dominion and control over funds, as petitioners did by means of their signatory powers over the ULC account, no charitable contribution or gift will be considered to have been made. See e.g., ; , and cases cited therein, on appeal (9th Cir., June 25, 1984). Petitioners' retained control of the funds deposited to the ULC account precludes a finding that they actually made charitable contributions. See . Moreover, in order for contributions to be deductible under section 170, an organization must be both organized and operated exclusively for exempt purposes. Petitioners have failed to establish that ULC Charter No. 32680 was organized exclusively for exempt purposes. The only evidence introduced by petitioners relating to the organization of ULC Charter No. 32680 Was a document entitled "Bylaws; Universal Life Church, *19 Inc.; Congregation Number 32680." Such document contains no provision limiting the purposes of ULC Charter No. 32680 exclusively to exempt ones, and does not satisfy petitioners' burden of proving that ULC Charter 32680 was organized exclusively for exempt purposes as required by section 170(c)(2)(B). Similarly, petitioners have failed to establish that ULC Charter No. 32680 was operated exclusively for exempt purposes. Petitioners' testimony concerning the operation and activities of ULC Charter No. 32680 was vague, and affords us no basis on which to conclude that it was operated exclusively for exempt purposes as required by section 170(c)(2)(B). Based upon the foregoing, we conclude that petitioners have failed to meet their burden of proof with respect to charitable contribution deductions for amounts purportedly donated to ULC Charter No. 32680 and, thus, are not entitled to any deductions under section 170. [4]
*20 The second issue is whether petitioners are liable for additions to tax pursuant to sections 6653(a) and 6653(a)(2). Section 6653(a) provides that if any part of the underpayment is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to five percent of the underpayment. Petitioners bear the burden of proving that their underpayment was not due to negligence or intentional disregard of rules and regulations. Rule 142(b); . Section 6653(a)(2), which is only effective for taxes the last date prescribed for payment of which is after December 31, 1981, provides that there shall be added to the tax an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence or intentional disregard and for the period beginning on the last date prescribed by law for payment. Petitioners' sole contention is that they were not negligent because they relied upon a professional tax return preparer to correctly fill out their tax returns. The general rule, however, is that the *21 duty of filing accurate returns cannot be avoided by placing the responsibility on an agent. See ; and cases cited therein. In addition, petitioners failed to show that they fully disclosed all of the relevant facts concerning ULC Charter No. 32680 to their return preparer. Thus, petitioners failed to satisfy their burden of proving that their underpayment was not due to negligence or intentional disregard of rules and regulations, and we sustain the addition to tax under section 6653(a). Since petitioners' entire underpayment for 1981 was attributable to their charitable contribution deductions, we also conclude for purposes of the addition to tax under section 6653(a)(2) that all of petitioners' underpayment for 1981 was attributable to negligence. See n. 3, supra.
The final issue is whether petitioners are liable for damages under section 6673. Section 6673 provides, as to cases commenced after December 31, 1982, [5] that the Court may award damages to the United States of up to $5,000 whenever it appears that the proceedings have been instituted *22 or maintained primarily for delay or that the taxpayer's position is frivolous or groundless. We have considered all the facts presented in the instant case, and, in our discretion, we have determined that damages pursuant to section 6673 will not be awarded in this case. To reflect the foregoing, Decisions will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Sec. 6653(a) has been redesignated as sec. 6653(a)(1) for taxes the last date prescribed for payment of which is after December 31, 1981. ↩
3. Sec. 6653(a)(2) is effective for taxes the last date prescribed for payment of which is after December 31, 1981. The amount of the addition to tax under this section is equal to 50 percent of the interest payable (A) with respect to the portion of the underpayment of tax which is attributable to negligence or intentional disregard of rules and regulations, and (B) for the period beginning on the last date prescribed by law for payment of such underpayment, and ending on the date of assessment of the tax (or, if earlier, the date of the payment of the tax). Since neither assessment nor payment of the tax has occurred in this case, the period described in sec. 6653(a)(2)(B) has not yet closed, and therefore, the amount of the addition to tax under sec. 6653(a)(2) cannot be determined at this time.↩
4. Petitioners raise an alternative argument on brief that amounts deposited to the ULC account constituted contributions "for the use of" the Universal Life Church, of Modesto, Calif. ("ULC Modesto"). Cf. sec. 170(a). As noted above, petitioners' retained dominion and control over these amounts precludes a finding that they in fact made any charitable contributions in this case. Furthermore, petitioners introduced no evidence that such amounts benefited ULC Modesto in any way. Petitioners rely upon the testimony given by Bishop Robert Imbeau of ULC Modesto in another case involving similar issues held during the same trial session. See . Even assuming that Bishop Imbeau's testimony in the present case would have been the same as it was in Abercrombie,↩ such testimony would not establish that the amounts here in question were contributions "for the use of" ULC Modesto. Accordingly, we reject petitioners' alternative argument.
5. Petitioners filed their petitions herein on January 17, 1983, and January 9, 1984.↩